Mr. Breedlove, good afternoon. Thank you, Your Honor. I appreciate all of your taking the time to join us this morning. This is a relatively straightforward case, in my opinion. The trial court very clearly and succinctly posed the question for us today, which is in my brief on pages 5 and 6 of the record on page 100, which is very simply, does the Carroll Doctrine apply in an independent trial? The trial judge answered that as a negative. The Carroll Doctrine was essentially a superior holding over the Pertilage Doctrines, which don't allow more restrictions in the Pertilage. Since that time, the United States Supreme Court has weighed in on that issue. In Collins' case, which was an 8-to-1 decision holding that to the contrary, the defendant's driveway, a vehicle parked in the defendant's driveway, is indeed within the Pertilage. And so a search of it without a warrant is unreasonable for the United States Constitution and should be suppressed. Importantly in this case, there are a number of facts that the trial court found. First was that the gun was not visible outside of the vehicle. The state will argue otherwise and did in a brief on pages 3, 6, 15, and 19 that the police officer saw the pistol in the backseat of the vehicle from outside the vehicle. However, the court said during the motion to suppress hearing the opposite. The court found that the police officer on this issue was not credible and that as a matter of fact, which this court abused for abuse of discretion, as a matter of fact, the police officer could not see the weapon. And so there was no knowledge that the weapon was in the vehicle until after the door of the vehicle was opened. At that point, it's a search. Equally as important, they found that it was indeed on the Pertilage, which is again a fact issue as to the location of the vehicle. So it was on the Pertilage. And so Collins applies. And lastly, the defendant was already in handcuffs at the time the search of the vehicle occurred. And the police also had the keys to the vehicle at that point and received them from another party in the home. And so at that point, there is simply no way for there to be any disturbance to whatever evidence may be in the vehicle that the police wanted to search. The court took judicial notice of the fact that the judges of the Kankakee County were available and could have been available for a search warrant to be issued of the vehicle. And for those reasons, they should have got a search warrant. Ultimately, our government is one that operates on a system of checks and balances. The judicial branch has the solemn duty and responsibility to ensure officers of the executive branch, including police officers, are following the Constitution. And one of the things that is crucial in that is that when a search is going to be conducted, unless there are exigent circumstances, they have to ask for permission from the judicial branch to go and do that. They don't get to come later and ask for forgiveness for violating the Constitution. And here, it was not an issue of hot pursuit. As I indicated previously, the defendant was already in handcuffs. It was not an issue where the Carroll Doctrine would apply because we were within the Pertilage and Collins and Schultz and the Carroll Doctrine thus does not apply. It was not an issue where anyone was in any danger of life, liberty, or property. There was no danger to the police officer. The record indicates, essentially, that the scene where the police officer searched the vehicle to look for the weapon and found it was about as calm as this courtroom is today. It was not a situation where there was chaos or misinformation or anything like that. And so the police officer could very easily have taken the appropriate steps to call for and receive a search warrant. The state may argue that that would have taken time or that it could have moved the vehicle. If somebody had gotten the vehicle during that intervening period, tried to drive it elsewhere, that may be a different set of circumstances. But that's not what happened in this case. Insofar as the state relies on the issue of whether or not this was an inventory search, their only suggestion that it was an inventory search is based on an ordinance. And the court specifically rejected that it was a proper search under the ordinance. The existence of an ordinance is a fact issue. It has to be proven. It is not like a law, obviously, where people take judicial notice and understand what the law is. But because there are so many overlapping, slightly different, and potentially contradictory ordinances within the state of Illinois, each one of those ordinances, if somebody is going to rely on it in court, has to be proven. The proofs are simple, but it is a step that has to be followed. And where they haven't done that, they can't, in front of this court, rely on the ordinance as an inventory search pursuant to that ordinance. But that ordinance isn't before the court. Because, again, as a factual issue, because it hasn't been laid out, the facts as they sit before this court on this case are essentially that no ordinance exists. So, therefore, no inventory search. That's correct, Your Honor. That is our position. The ordinance wasn't admitted into evidence, is that correct? That's correct, Your Honor. So we don't know whether the ordinance allowed inventory searches of vehicles found on private property. That's correct, Your Honor. So I think the judge, in his oral discussion of it, does express some concern about the ordinance, and that may be why the state chose not to put it in front of it. But whatever strategic decision the state made in not doing that, the fact remains that it is not before this court. The hot pursuit cases that the state relies upon involve situations where a person, during the course of the police conduct, retreats actively as a response to the police, to their privilege. And that is hot pursuit. That is not the case here. The first contact he had with the police was when he was already on his privilege. So the state's arguments that the retreating to the privilege constitutes some sort of hot pursuit is an inaccurate portrayal of the facts and of the hot pursuit issue. He retreated to his privilege with his daughter who he had visitation with. Am I correct? Or what was the... I hesitate to use the word retreat, as Your Honor, because that implies that he was doing it... I agree. He's at his home. Correct. He's at his home the first time the police make contact with him. And that's only on the basis of an informal complaint by the paramour of the daughter's mother. That's correct. He had called to complain that the defendant had... Pointed a firearm at him. Parked on his lawn and got into an argument and pointed a firearm at him. Crucially, when it proceeded to a jury trial, all of those issues were... The jury essentially found all of that to be uncredible testimony. Because he wasn't found guilty on the charge relating to the pointing of the weapon, but only on the charge relating to the possession of the weapon in the vehicle. And that's why I believe it's... So what is he charged with, exactly? It was aggravated unlawful use of a weapon for having the weapon in his vehicle in a... In his vehicle uncased. Uncased. Correct. It was found in the back seat... He's not in the back seat, in the back pocket of the driver's seat. I believe that's where it was found. If it were in the console, would that have been a chargeable offense? I think it would be fact-dependent, Your Honor, on exactly how it was placed in the console, whether it was locked and whether it had... None of those Supreme Court... Our Supreme Court has ruled that that is casing. I'm not prepared to... On that issue... The question is, was it loaded, though? I don't recall, Your Honor. There's no facts as to that? They may be in there. I don't recall whether or not it was loaded, Your Honor. Okay, well, gun laws in the state are such that you must have a ploy card to be possessing of a firearm. Correct. But that if a firearm is cased, it has to be unloaded. Correct. Unless you have a concealed carry permit. Correct. And what... Any facts going to any of those things? Not that I'm aware of, Your Honor, because I don't believe those facts... Well, does he have a ploy card? I don't recall. I believe he did, but I don't recall. I think he did. Okay. But not a concealed carry. I apologize, because to me the issue was one of the suppression of the search itself. But I believe he did have a ploy that he may have had a concealed carry permit. No, there's no concealed carry under the facts of this case. Mr. Breedlove, the state contends that this is forfeited, your argument. Can you address plain error? I can, Your Honor. I do think it is plain error in a number of ways. One, it is closely balanced. The state suggests that it's not closely balanced. But here there were two charges, and he was found guilty on one and not on the other. And as I related in the brief, essentially the only fact that they can be relying on is the improper search of the vehicle that led to the discovery of the firearm. And so for that reason, I think it is about as closely balanced as it can be. And because of that, because the suppression issue would essentially negate the entirety of the state's case, the argument that it's not closely balanced is not one that I agree with, Your Honor. Lastly, they suggest that the officer was acting in good faith in the issues, whether the deterrence on the suppression issue outweighs the suppression issue. This was not a violent crime. There is no – he was sentenced to a number of weekends in prison, which we have already run, as well as his probation, which we've already run. And so for those reasons, I think this is exactly the type of case where the court can inform the executive branch and the judicial – the lower judicial branch that this type of search is not warranted and it was a violation of the Constitution without harming – it is not an issue where we would be suppressing on what the states argue is a good faith exception on a more serious crime. Thank you, Your Honor. And so for those reasons, I don't think you could face the errors applicable. And I think Kilbride's opinion and the People v. Poponian discusses that more in depth and more eloquently than I ever could. But I think this is an appropriate case for the court to confirm that in Illinois, which has historically had a broader view of Fourth Amendment protections in the United States Supreme Court, that that applies also to issues that would be equally pertinent. If there are no further questions, I'll see you at this table. Thank you, Mr. Breedlove. Thank you, Your Honor. Ms. Caston? Good afternoon. Good afternoon, Ms. Caston. May it please the court, counsel, Kelsey Caston on behalf of the state. As an initial matter, Your Honors, Jasmine Wharton was original counsel on this case for the state. However, she's moved on to a new adventure, and so I was assigned to take over on her behalf today. And the issue before this court is subject to plain error review, where the defendant forfeited this issue after not filing a post-trial motion and not arguing plain error in his brief. While the state argues that no error has occurred and that the issue has been forfeited, if this court found error, it would not amount to plain error. The evidence in this case was not closely balanced. In this particular case, the defendant did only get in question. He did have a white card, Your Honor. He did not possess a concealed carry permit. There are two witnesses. Was it loaded? It was, Your Honor. If you look in the record at 417, the defendant conceded at trial that the gun was sticking out of the back of the seat. It was not completely cased, and he did not like the term loaded, but he did concede that the clip was full of bullets and the clip was in the gun, which most people would think is loaded. The law would say that. The law, yes, exactly, Your Honor. The defendant did not like that terminology, but he probably wasn't in that case. The victim and the defendant's young daughter in this case both consistently said the same thing. His daughter was going to get into the front seat of the car, and when she opened up the door, her father was holding a gun pointed at Joe, her stepfather, before driving away. The officers responded. They spoke with the victim. They went to go speak with the defendant. As the officer was going to speak with the defendant, he was able to see into the defendant's vehicle prior to the search, and he stated that by looking through the window, he was able to see the gun in plain view. What do we do with the trial court's contrary finding on that? Your Honor, this court reviews the judgment rather than the reasoning and can affirm on a basis supported by the record. In this case, I think it came down to the trial court wasn't happy with the report that the officer filed. He wasn't happy that the officer had failed to put that fact into the report. The officer stated in the report that he opened up the door and he saw a gun. However, his testimony was consistent both at the motion to suppress and at the trial, and he stated that all the back windows were tinted. Apparently, there's a difference between a limousine tint and a other kind of tint. I had to Google that. I wasn't aware. It's not a limousine tint, and so he was able to see through the window, and he could see the silver handle of the gun sticking out of the back of the seat. I think it's clear from the record that the trial court just felt like the officer should have done a better job with the specifics in this report. However, his testimony was consistent, and he shared the same information at the trial, which was accepted. Does it make a difference if the officer opened the car and saw it or the officer viewed it without opening the car? Your Honor, it just goes to which exception applies in this case, whether it be the Carroll Doctrine or the Plainview Doctrine. Obviously, in this case, the state is presenting four exceptions. It feels we're sufficient to not have to obtain a warrant in order to search the vehicle. How does the Carroll Doctrine apply here? Your Honor, the trial court held that the search was permissible under the Carroll Doctrine because officers had probable cause to believe that it contained contraband or the fruits, instruments, or evidence of criminal activity. The trial court did not… Well, we don't have contraband here, do we? No, Your Honor. So what do we have? It's evidence of a crime. So? Evidence of a crime. It would be the gun, which was pointed at the victim, or Joe, whichever you would like to call him. And the trial court felt that it was reasonably arising out of the circumstances known to the seizing officer. He did specifically find that there was probable cause for the officers to go speak to the defendant, probable cause to arrest after speaking with his daughter, who said that her dad had pointed the gun at Joe, and then there was also probable cause to search for the weapon. And what was the offense of pointing the gun at the victim? Your Honor, he was charged with unlawful possession of a weapon and aggravated assault. He was not found guilty of aggravated assault. He was found guilty of unlawful possession of a weapon. Okay. So aggravated assault, putting him in apprehension of receiving a battery, and it was aggravated because the firearm was held to do that? Yes, Your Honor. Okay. And obviously we can't speak for the mindset of the jury. However, just because he was not convicted of one offense does not mean that there wasn't sufficient evidence or that the evidence was closely balanced for the other offense. In this case, it really doesn't get more straightforward, and we will agree with the defense counsel on that statement. And in this case, the evidence was not closely balanced. This is plain error review. You have a little girl, unfortunately, who was forced to testify against her dad. Yeah, dad pulled a gun on Joe, and she consistently throughout the entire series of this case testified to that same fact. There's also during the trial when cross-examination, the state asked the defendant a question, and he said, Joe hasn't even seen my gun. And the state has to ask him, how did he know what the gun looked like, and how did he describe it to the police who came looking for it? And the defendant didn't have an answer for that because he said Joe hadn't seen the gun because he hadn't pulled it. But Joe could describe the gun perfectly. In this particular case, there was sufficient evidence to support probable cause for the officers to investigate and arrest the defendant and then search the vehicle. Obviously, the department briefly discussed the parole doctrine, which was the exception that the trial court applied at the motion to suppress hearing. However, the state has also argued that the plain view doctrine would have been appropriate in this case, despite the trial court's initial ruling that it was not pleased with the officer's written report. It was seized incident to arrest. Officer Williams viewed the gun inside the defendant's car before conducting the actual search on the defendant's vehicle. It's stated in the record at page 32 and also at 331 through 332. Again, the defendant conceded at trial that the gun was sticking out of the backseat. I have a question about that because the issue on appeal is just whether the ruling on the motion to suppress was correct or incorrect. Are we allowed to consider evidence at trial when measuring the trial judge's decision? Yes, Your Honor, you are. The court reviews the judgment rather than the reasoning, and whether the decision is supported becomes irrelevant when it's supported evidence at the trial. You can consider both in this particular case, and that's briefed further in the state's brief. I don't have an actual page cite for you, but it is contained within the argument, Your Honor. The trial judge specifically found that the officer's testimony was not credible about seeing the weapon in the backseat. Are we allowed to substitute our findings for that finding? Yes, Your Honor, you are, because that's the court's reasoning and the court's reviewing the actual judgment. In this particular case, in looking at the record, we think it's very clear that really what the trial court wasn't happy with was the officer's written report. It wasn't necessarily the officer's testimony itself. It was the fact that the two didn't corroborate each other. I thought the court found that it wasn't possible to see it through the window. That is what the trial court stated, Your Honor. However, the trial court wasn't the one actually looking through the vehicle. Well, that's the trial court's judgment finding. Yes, Your Honor. However, the officer did say that he could see through it the pictures. He didn't find it credible. The photographs, Your Honor, the evidence. We're not a trial court to make these findings, are we? No, Your Honor. However, it goes to the manifest weight of the evidence, and the court finds that the officer's testimony was credible. You don't have to agree with the trial court. Who determines the credibility? The credibility of the officer goes to the jury, Your Honor. Those are the fact finder, either judge or jury. Yes. Not to an appellate court. Yes, Your Honor. However, this goes to the manifest weight of the evidence. This court could find that the officer's testimony was credible and that he was able to see through the vehicle. However, even if this court determines that Plainview wasn't a reasonable exception in this case, we can move on to one of the other exceptions that could apply in this case, Your Honor, including the inventory search. There's been some questions about the ordinance that was not supplied to the court in the motion to suppress. It's still not in the record. However, any completeness of the record is resolved against the defendant at this level in the case. There was some circumstantial evidence given to the court, meaning the form that the officers used to do an inventory check of the vehicle, as well as some kind of language that's cited to the ordinance, but the actual language of the ordinance itself was not provided. And, again, I didn't have this case originally. So there was a towing and inventory search? Yes, Your Honor, there was. And the officers actually explained that, starting at the record at page 32, going through 37, stating that a felony ordinance for the vehicle was used in the commission of the felony and it was towed administratively, and that prior to the towing, the police had a form that they would fill out about what was in it so that they couldn't be accused later of damaging the vehicle or stealing or anything like that. But if the car was in the privilege, they needed a warrant to take it? Unless there was an exception that applied to it, Your Honor, yes. And the state has conceded in its brief that it would be considered within the privilege. However, the defendant's reliance on the case Collins v. Virginia shouldn't apply here. It's a case that was decided in 2018, and this incident occurred in 2016 when United States v. Hines was the controlling law, which said that a search can be conducted where there's probable cause that the vehicle contained evidence of the crime. Obviously, the defendant was picking his daughter up in the car. He was holding it in the car at the victim. The daughter gets in the car and they drive away. They knew that that was where the weapon was most likely going to be. There was probable cause to search it. The earlier case involved a moving car on the road. This did not. Yes, Your Honor. However, in the case of Collins, it's also a different case where the defendant wasn't even home and they walked up and they had seen a tarp and they removed it. In this case, we have the officers who had probable cause to go speak with the defendant, speak with his daughter. They have probable cause to arrest. They're on the property. The keys were given to them by the defendant's mother. And again, an officer said they could see in the vehicle that even if the plaintiff doctrine doesn't apply, the officers are relying on the precedent that they know. They can't foresee the future that the law is going to change in two years. They're relying on what they can train to know, which is that they did have probable cause to search the vehicle in the crimes. Okay. That's contrary to what the Supreme Court said in Collins. They said that it had never been the law that a situation like this would be covered under the Carroll Doctrine. Your Honor, the state would still argue that it doesn't apply retroactively to this case because the officers were acting in good faith when they were conducting the search of the vehicle. And the real issue, I think, for the trial court at the motion to suppress was that they towed the vehicle. He actually said they had probable cause to find the weapon. His issue was that they had towed the car. He really did seem to have an issue with the ordinance. However, the weapon itself, he said that there was probable cause for them to search for it. Under the Carroll Doctrine? Yes, Your Honor, under the Carroll Doctrine. And the Carroll Doctrine, as Justice McDade pointed out, involved a car on a public roadway, did it? Yes, Your Honor. And this is not on a public roadway? No, Your Honor, it was parked in the driveway, which is clear from the photographs. What is the difference between a car parked in the driveway and arguably the curtilage, right? Yes, Your Honor. And let's say there's one of these little stand-alone buildings where you put your lawnmower and there's a window in it. And you look inside the window and you see a gun, okay? And would you have to get a warrant then to go into that shed? Your Honor, wouldn't that be plain view? And then they would be able to go in and free the weapon? Even assuming... I mean, is the shed part of the curtilage? Your Honor, a shed would still be different from an automobile. And I don't think that the Carroll Doctrine specifically applied to anything other than an automobile. Okay, but what's the justification under the Carroll Doctrine to search a car? The fact that the circumstances were known to the CPO officer that the evidence which they were seeking was within the vehicle. I'd like to test that theory with you just a little bit because my understanding of the facts are the defendant was in the house. Yes, Your Honor. And I think the daughter was in the house and the car was parked and it was empty. So why wouldn't there be probable cause to believe the gun is in the house with the defendant? Why is there probable cause to believe the gun is in the car? That's what I'm confused about. I believe there was testimony from the daughter where she said something about daddy keeps his gun in the backseat or behind the seat or something along those lines. Something that she had said where she obviously knew where daddy kept the gun. And maybe I'm wrong. When we're evaluating probable cause, aren't we evaluating the information the officers had at the time of the seizure? Yes, Your Honor. Had the little girl told the officers that daddy hides the gun in the car prior to the search? Your Honor, I'd have to look at the record again to recall exactly what transpired. I do know that she said at several different points that her dad kept the gun behind his seat. However, I can't recall off the top of my head. And I know this wasn't your case. You didn't write it. Thank you, Your Honor. And we do have a specific finding from the trial court that the inventory search didn't apply, right? Yes, Your Honor. I believe so. It had more to do with, as defense counsel noted, the trial court was not very happy with the ordinance. There was some discussion. And then there was never the actual language of the ordinance provided to the trial court. And it found that the hearing doctrine applied instead. So what did the trial court rely on then for this search? Your Honor, the trial court found that a problem caused to speak to the defendant, speak to the daughter. Based on what the daughter had said, they could arrest and they could also search for the weapon because there was probable cause that the gun was in the car. Now, I'm not entirely sure this is on the test. I only have what the record says. What's left? What doctrine, exceptions, warrant is left? Your Honor, it's a good faith exception. The officers were relying on their training and that they had been told when officers said he could see and do it, they had the inventory search, which is standard operating procedure for those officers, relying on what they've been trained to do. So in acting in good faith, they did their jobs, and they found the gun, and then the vehicle was towed. However, even without the vehicle or the search of the vehicle, there's still sufficient evidence in this case for a conviction where the daughter gave very convincing testimony about what occurred as well as the victim's testimony. Really, it's sad, but the little girl gave very strong testimony against her dad. He did indeed point the gun. Did she testify during the suppression hearing? No, Your Honor, at the trial. She also spoke with two police officers when they came to speak with her father, and there is also mention in the record about a recording that she did with the police officers where she spoke with them, like, the next day or something along those lines. Obviously, that wasn't put in the record for me to listen to if it was provided to me, but it was mentioned in the record. Thank you. Thank you, Ms. Kasten. Mr. Bravelove, will you follow along? Briefly, I want to address two things, Your Honor, in response. One is that the Plainview Doctrine was explicitly rejected by colleagues in situations where we're discussing the Carroll Doctrine and its implication on the privilege of the property. That was the basis of Justice Alito's dissent, the sole dissenter in that case, and the majority did not find that the Plainview was appropriate in that situation. Second, I remain, as I was in my brief, unclear as to what grounds the officer found the weapon. The case has ebbed and flowed, as the arguments see fit for the State, on whether or not it was a search, whether it was justified under any doctrine, or whether it was an inventory incident to Tome. And so I think it's difficult to rely on good faith. A good faith exception would, to me, require a clear description of what the officer is doing, whether searching or inventory. And because the State has never clearly committed to one of those options, I think it's tough to argue that he was operating in good faith when we can't delineate what his modus operandi was at the time that he was operating. Second, the State suggests that the incompleteness of the record is resolved against the defendant. I don't find the record to be incomplete. The defendant does not, first of all, the trial court did not rely on the evidence. It said it was not a proper basis. We do not rely on evidence. If the State wished to rely on it, either at the trial court level or at any stage of the review and appeal process, that would be incumbent upon them to provide it. It is not the defense's obligation to provide additional facts that the State wants. If it were a matter of law that I had found that supported the State, the rules of professional conduct would require me to disclose contrary law. But an ordinance is not law. An ordinance is fact. Second, or next, rather, the State has asked you to reconsider the evidence of trial. And respectfully, I don't think that's the purpose of this court. There was, the State suggests that the finding that the police officer was unable to see the weapon was the court's legal theory as to why the search was proper. But they're skipping a step. There has to be a fact to apply it to the legal theory. And first, we have to determine what that fact was. And the fact was that the trial court found as a matter of fact that the weapon was not visible from outside the vehicle. And so to suggest anything to the contrary would be substituting this court's judgment for... What did they base that finding on? They based that finding on the testimony of the officer, his written report, the photographs that were present that they presented, presumably the conduct of the police officer on the, that is one of the things that we don't get at the appellate level, if he was, for example, combative or fidgety or whatever other indice that the judge may have determined made him less than credible, those are things that aren't available to us. And that's why we entrust the prior fact at the trial court to make those decisions. We don't know why he was not credible. We simply know that he was not credible. The State tries to suggest that the trial judge just didn't like the police officer because he thought he filed a sloppy report. I think that's disingenuous to the trial court. The trial court decided to listen to a significant amount of testimony, reviewed all of the evidence, weighed all of the factors, and weighed everything that it could and had to report about the officer and made the determination that he was not credible and that the fact is that the gun was not visible from outside the vehicle. Was the jury asked to consider an issue regarding whether the gun was or was not visible? Was the visibility of the weapon in the backseat even an issue, a factual issue at trial? That would not be a factual issue at trial because it would be whether or not the gun was visible at that time would be an element of the searcher's problem. It appears that the issue was whether the defendant had control of the vehicle at some point in time when the gun was there, not whether the gun could be seen in the vehicle. But I may be mistaken, and I'll read the record carefully. But I don't, Your Honor, believe that that was a fact, that the jury would have made a determination on one way or another in coming to the dual conclusions on the case that it did. I apologize, one minute. Thank you, Your Honor. For my final minute, Your Honor, if any of the three of you have any additional questions. No. Thank you very much. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.